**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Barry Northcross Patterson, )<br>            ) <br>       Plaintiff,    ) <br>            ) <br>    vs.        ) <br>            ) <br>Charles L. Ryan, *et al.*,    ) <br>            ) <br>       Defendants.   ) <br>_____) | No. CV 05-1159-PHX-RCB <br><br>  O R D E R |

After more than six years of litigation, familiarity with which is assumed, a single count remains in plaintiff *pro se* Barry Northcross Patterson's complaint.[1] More specifically, in count I plaintiff asserts claims against defendants Broderick and Mason,[2] both of whom are Arizona Department of Corrections ("ADOC") chaplains. Allegedly defendants violated plaintiff's free exercise rights under the First Amendment, and his rights under the Religious Land Use and Institutionalized Persons Act

---

[1] All references to the complaint herein shall be read as referring to the second amended complaint ("SAC") (Doc. 106).

[2] Neither the complaint nor the answer provides the first names of these defendants.

("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, by not providing him with a three meal a day kosher diet, despite the fact that he is a Messianic Jew purportedly eligible for a kosher diet under ADOC regulations.  Plaintiff is seeking injunctive relief as well as compensatory and punitive damages.

Pending before the court is defendants' motion for partial dismissal.  Focusing solely on plaintiff's RLUIPA claim, defendants argue that they are entitled to dismissal of that claim for two reasons.  First, defendants argue that the Eleventh Amendment bars any RLUIPA claim for damages against them in their official capacities.  Second, defendants argue that RLUIPA does not provide a private cause for monetary damages against state officials, like them, in their individual capacities.  Alternatively, defendants argue that they are entitled to qualified immunity from plaintiff's RLUIPA claim for monetary damages.  Lastly, regardless of whether plaintiff is asserting his rights under the First Amendment or RLUIPA, defendants contend that the court should dismiss as moot his request for an injunction ordering defendants to provide him with a completely kosher diet.

Essentially, plaintiff concedes that the issue of whether RLUIPA allows for the recovery of monetary damages against defendants in either their official or individual capacities is a legal one, properly resolved on this motion.  See Supp. Resp. (Doc. 124) at 1 ("Patterson leaves it to this Court or the Supreme Court to decide whether or not he is allowed money damages under RLUIPA."); and at 3 (same).  It is difficult to discern exactly what plaintiff's position is regarding the

defendants' invocation of qualified immunity. Evidently plaintiff believes that the defendants' reliance upon that doctrine somehow contravenes the Ninth Circuit's instructions on remand. It is clear, however, that plaintiff disagrees that his request for an injunction requiring that he be served three kosher meals daily is moot.

### *Background*

The material facts, taken as true and construed in the light most favorable to plaintiff as the non-moving party, see Johnson v. Lucent Technologies Inc., 2011 WL 3332368, at *8 (9th Cir. 2011) (citation omitted), are straightforward and few. During his incarceration, plaintiff became a Messianic Jew. SAC (Doc. 106) at 3, ¶ 3. Thereafter, on approximately March 1, 2004, plaintiff filled out an ADOC form requesting a kosher diet, which he claims "is common for many Messianic Judists [sic] who follow many of the Jewish traditions." Id. When he received his first meal pursuant to that request, allegedly it was "not the kosher meal given to Jewish believers[,]" but a "vegetarian meal." Id.

Plaintiff received that vegetarian meal even though he "is not . . . [and] has [n]ever been a vegetarian[.]" Id. According to plaintiff, he was being provided vegetarian breakfasts and lunches, but "standard kosher dinner[s]" because ADOC was informed by a "Jewish Rabbi[] . . . [that] that should suffice for [plaintiff's] religious needs." Id. The thrust of this count is plaintiff's belief that he is being discriminated against because he is a Messianic Jew.

Plaintiff Patterson is currently housed at the Central

- 3 -

Arizona Correction Facility ("CACF") in Florence, Arizona. SAC (Doc. 106) at 1. At the time of the events complained of herein, however, he was housed at an ADOC facility, also in Florence, Arizona. Id. at 1, ¶ 2. Defendants Broderick and Mason maintain that they do not work at that CACF facility, which they describe as a "private prison[.]" Reply (Doc. 125) at 3:24. The SAC is silent, however, as to where defendants are currently working. And because this is a motion to dismiss, the court must confine itself to the allegations in the SAC. The SAC simply alleges that plaintiff encountered those two defendants while at the ADOC facility in Florence, Arizona. SAC (Doc. 106) at 1, ¶ 2; and at 3, ¶ 3.

### *Discussion*

### I.  *Governing Legal Standards*

Defendants did not specify which Rule forms the basis for their dismissal motion. However, because defendants are challenging the legal sufficiency of plaintiff's RLUIPA claim, presumably they intended to rely upon Fed. R. Civ. P. 12(b)(6), which allows for dismissal for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). However, because defendants contend that plaintiff's claim for injunctive relief is moot, Fed. R. Civ. P. 12(b)(1), governing motions to dismiss for lack of subject matter jurisdiction is the proper procedural vehicle for this aspect of defendants' dismissal motion. See Nasoordeen v. F.D.I.C., 2010 WL 1135888, at *5 (C.D.Cal. 2010) (citing cases) ("Federal courts lack subject matter jurisdiction to hear claims that are moot.") Regardless of which Rule governs the present motion, plaintiff

- 4 -

is entitled to similar safeguards.

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." Cook v. Brewer, 637 F.3d 1001, 1004 (9th Cir. 2001). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation marks and citations omitted). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" Hinds Investments, L.P. v. Angioli, 2011 WL 3250461, at *2 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)) (other citation omitted). "Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss." Johnson, 2011 WL 3332368, at *8 (citation omitted).

"Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." Hinds Investments, 2011 WL 3250461, at *2 (citation omitted). At the same time, however, because plaintiff Patterson is proceeding *pro se*, the court "must construe his complaint[] liberally even when evaluating it under the *Iqbal* standard." Johnson, 2011 WL 3332368, at *9 (citation omitted).

Likewise, when, as here, defendants are facially attacking subject matter jurisdiction, "factual allegations of the complaint are presumed to be true and conflicts in the pleadings are resolved in the plaintiff's favor." Kelly v. Public Utility Dist. No. 2, 2011 WL 294166, at *4 (E.D.Wash. 2011) (citing,

*inter alia*, Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir.2009) (internal citations omitted)).  With these standards firmly in mind, the court has carefully examined the complaint *vis-a-vis* defendants' motion for partial dismissal.

## ***II.  RLUIPA***

### ***A.  Official Capacity***

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted); see also Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) (citation omitted)  ("Eleventh Amendment immunity . . . shields state officials from official capacity suits.")  "The Eleventh Amendment bars an action by a private citizen against a state 'unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or [the] state has waived it.'" Jachetta v. United States, 2011 WL 3250450, at *7 (9th Cir. 2011) (quoting Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010)).

"To abrogate a state's sovereign immunity under § 5 of the Fourteenth Amendment, Congress's intent must be 'unequivocally expressed.'" Id. (quoting Tennessee v. Lane, 541 U.S. 509, 517, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (internal quotation marks omitted)).  "Similarly, a state will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" Id. (quoting

Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (internal quotation marks and alteration omitted)); see also Sossamon v. Texas, ___ U.S. ___, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) ("A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute ... [and] may not be implied." (citations omitted)).

In moving for dismissal of the RLUIPA claim for damages against them in their official capacities as ADOC chaplains, initially defendants solely relied upon Holley v. Cal. Dep't of Corr., 599 F.3d 1108 (9th Cir. 2010). There, the Ninth Circuit, "join[ing] five of the six circuits to have considered th[e] question[,]" held that "RLUIPA's 'appropriate relief' language does not unambiguously encompass monetary damages so as to effect a waiver of sovereign immunity from suit for monetary claims[.]" Id. (internal quotation marks, citation and footnote omitted). Continuing, the Holley Court explained that "[t]he phrase 'appropriate relief' does not address sovereign immunity specifically at all, let alone 'extend [a waiver of sovereign immunity] unambiguously to . . . monetary claims' in particular." Id. (quoting Lane, 518 U.S., at 192, 116 S.Ct. 2092). Given that unequivocal holding, Holley supports the view that plaintiff Patterson has not stated a RLUIPA claim for monetary damages against defendants in their official capacities.

Not only that, the Supreme Court's decision in Sossamon v. Texas, 131 S.Ct. 1651, 79 L.Ed.2d 700 (2011), which defendants note in a supplemental filing, leaves no doubt that plaintiff Patterson's RLUIPA claim for monetary damages against defendants

- 7 -

in their official capacities cannot survive this motion to dismiss. "[G]rounded on the line of Eleventh Amendment authority requiring 'clear expression' to abrogate the sovereign immunity of states from damages claims[,]" Center Familiar Cristiano Buenas Nuevas v. City of Yuma, 2011 WL 2685288, at *3 (9th Cir. 2011), the Sossamon Court held "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver. Sossamon, 131 S.Ct. at 1663, 79 L.Ed.2d 700. Therefore, this court finds that the Eleventh Amendment bars plaintiff Patterson's RLUIPA claim insofar as he is seeking monetary damages from defendants Broderick and Mason in their official capacities. As such, defendants are entitled to dismissal of that claim.

### B. Individual Capacity

Construing the complaint as alleging a RLUIPA claim for damages against them in their individual capacities,[3] defendants argue that the court should dismiss that claim because it is not cognizable. The Ninth Circuit has not yet "ruled . . . in a precedential opinion[]"[4] on the issue of whether RLUIPA

---

[3] It is beyond peradventure that *pro se* complaints must be "liberally construed[.]" Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 923 n. 4 (9th Cir. 2011). So, even though plaintiff Patterson's complaint does not explicitly allege that defendants are being sued both in their official and individual capacities, that is a reasonable inference based upon a liberal construction of the complaint. Thus, as did the defendants, this court is treating plaintiff's claims against defendants Broderick and Mason as being brought against them in both capacities.

[4] As the Fifth Circuit observed in Sossamon, "[t]he Ninth Circuit appears to have assumed that a cause of action for monetary relief against state actors in their individual capacities exists, but its cases contain no analysis and are unpublished." Sossamon, 560 F.3d at 372 n. 23 (citing Campbell v. Alameida, 295

- 8 -

"appli[es] to private actors sued for damages in their individual capacity." Florer, 639 F.3d at 922 n. 3. Indeed, as recently as April 15, 2011, the Ninth Circuit has continued to "reserve" on that "question for another day." Id. Likewise, the Supreme Court has not yet decided whether persons can be sued in their individual capacities for damages under RLUIPA.[5] Nonetheless, given the weight of soundly reasoned authority set forth herein, the court agrees with defendants and dismisses plaintiff's RLUIPA claims against them for monetary damages in their individual capacities.

As the Ninth Circuit has acknowledged, "[t]he Fifth, Seventh, and Eleventh Circuits have held that RLUIPA does not provide an action for damages for individual-capacity claims." Florer, 639 F.3d at 922 n. 3 citing Sossamon v. Lone Star State of Tex., 560 F.3d 316, 327-28 & n. 23 (5th Cir. 2009); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272-75 (11th Cir. 2007)); see also Rendelman v. Rouse, 569 F.3d 182, 184 (4th Cir. 2009) (holding that "when invoked as a spending clause statute, RLUIPA does not authorize a claim for money damage against an official sued in her

---

Fed.Appx. 130, 131 (9th Cir. 2008) (mem.) (unpublished); Von Staich v. Hamlet, Nos. 04-16011 & 06-17026, --- Fed.Appx. ----, ----, 2007 WL 3001726, at *2 (9th Cir. Oct. 16, 2007) (mem.) (unpublished)); see also Shilling v. Crawford, 377 Fed.Appx. 702, 705 (9th Cir. 2010) (declining to "settle th[e] question" of "whether money damages for RLUIPA claims are available against state actors sued in their individual capacities because even assuming *arguendo* that such damages would otherwise be available, the defendants in this case are entitled to qualified immunity[]").

[5] The Supreme Court's grant of certiorari in Sossamon was limited to the following question: "Whether an individual may sue a State or state official in his official capacity for damages for violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. (2000 ed.)." Sossamon v. Texas, 130 S.Ct. 3319, 176 L.Ed.2d 1218 (2010). Necessarily then, the Supreme Court did not address the Fifth Circuit's further holding in Sossamon there is no cause of action under RLUIPA for individual capacity claims.

individual capacity[]"). Consequently, even in the absence of Ninth Circuit case law squarely addressing the issue, numerous district courts within this Circuit likewise have declared that RLUIPA does not provide for damages claims against officials sued in their individual capacities. See, e.g., Florer v. Bales-Johnson, 752 F.Supp.2d 1185, 1205-1206 (W.D.Wash. 2010) (footnote omitted) (dismissing claim regarding, *inter alia*, kosher meals because "individual Defendants cannot be held liable in their individual capacities in an action under RLUIPA[]"); Parks v. Brooks, 2010 WL 5186071, *1–*2 (D.Nev. 2010); Sokolsky v. Voss, 2010 WL 2991522, *2–*4 (E.D.Cal. 2010); Alvarez v. Hill, 2010 WL 582217, *11 (D.Or. 2010); Harris v. Schriro, 652 F.Supp.2d 1024, 1030 (D.Ariz. 2009).

There is no reason here for the court to depart from this weight of soundly reasoned authority. Particularly persuasive is the Spending Clause analysis of the Fifth, Seventh and Eleventh Circuits. Following that reasoning, in Harris v. Schriro, 652 F.Supp.2d 1024 (D.Ariz. 2009), the court cogently wrote:

> RLUIPA creates a cause of action for suits against 'a government'; government is defined as '(i) a State county, municipality, or other governmental entity created under the authority of a State; (ii) a branch, department, agency, instrumentality, or official of an entity listed in [that] clause . . . ; and (iii) any other person acting under color of state law . . . .' 42 U.S.C. § 2000cc-5. As the court in *Sossamon* noted, this language appears to create a right against state actors in their individual capacities and it even mirrors the 'under color of' language in § 1983. 560 F.3d at 327-28. But the Fifth, Seventh and Eleventh Circuits nevertheless held that individuals may not be sued for damages under RLUIPA. The Eleventh Circuit reasoned that RLUIPA was enacted pursuant to Congress's Spending Clause power, not pursuant to the Section 5 power of the Fourteenth

- 10 -

Amendment, citing *Cutter v. Wilkinson*, 544 U.S. 709, 715-16, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005), and that Spending Clause legislation is not legislation in its operation but operates like a contract, see *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). *Smith*, 502 F.3d at 1273-75. Individual RLUIPA defendants are not parties to the contract in their individual capacities, and therefore, only the grant recipient-that is, the state-may be liable for its violation. *Id.* The Fifth Circuit also concluded that RLUIPA was passed pursuant to the Spending Clause and noted that it also followed the same rule for Spending Clause legislation. *Sossamon*, 560 F.3d at 328-29. Likewise, the Seventh Circuit reasoned that '[c]onstruing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause,' and so the court declined to read RLUIPA as allowing damages against defendants in their individual capacities. *Nelson*, 570 F.3d at 889.

Id. at 1029-1030. That Spending Clause analysis is particularly apropos given that the Ninth Circuit has "upheld RLUIPA as a constitutional exercise of Congress' spending power." San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) (citation omitted).

Moreover, although noting RLUIPA's "ostensibl[e] . . . Commerce Clause underpinnings[,]" in Nelson the Seventh Circuit "interpret[ed] RLUIPA as an exercise of Congress's power under the Spending Clause[]" where there was "no evidence . . . that plaintiff's denial of a religious diet affect[ed] . . . commerce with foreign nations, among the several States, or with Indian tribes." Nelson, 570 F.3d at 886 (internal quotation marks and citation omitted) (citing Smith, 502 F.3d at 1274 n. 9 (reasoning that RLUIPA should be analyzed as an exercise of Congress's Spending Clause authority when there is no evidence

- 11 -

of an effect on interstate or international commerce); Sossamon, 560 F.3d at 328 n. 34 (same)).

Similarly, here, plaintiff Patterson's allegations that he has been denied a three meal a day kosher diet do not appear to implicate the Commerce Clause. See Mahone v. Pierce County, 2011 WL 3298898, at *5 (W.D.Wash. May 23, 2011), adopted in full by 2011 WL 3298528 (W.D.Wash. Aug. 1, 2011)(treating RLUIPA as an exercise of Congress's Spending Clause power where there was "no evidence of an effect on interstate or international commerce by an alleged denial of ["Jewish Kosher Meals three times a day"] to indicate that RLUIPA should be interpreted under the Commerce Clause[]"); Sokolsky v. Voss, 2010 2991522, at *4 n. 4 ("Plaintiff's allegations that he was denied a proper Kosher . . . for Passover diet do not appear to implicate the Commerce Clause."); Harris, 652 F.Supp.2d at 1030 (citation omitted) (Jewish inmate's claim, *inter alia*, that prison refused to modify his kosher diet meals did "not appear to implicate the Commerce Clause and so the Court interpret[ed] RLUIPA as a Spending Clause enactment[]"). Thus, following the rationale first set forth by the Eleventh Circuit in Smith, and subsequently adopted by the Fourth, Fifth and Seventh Circuits, the court holds that plaintiff Patterson cannot obtain monetary relief against defendants Broderick and Mason in their individual capacities for allegedly violating RLUIPA. Accordingly, the court grants defendants' motion to dismiss in that regard.

### III. *Qualified Immunity*

Having found that the complaint fails to state a RLUIPA

claim for damages against defendants in either their official or individual capacities, there is no need to consider defendants' alternative argument that they are entitled to qualified immunity on such claim. See Sokolsky, 2010 WL 2991522, at *4 ("[B]ecause this court finds that RLUIPA creates no right to recovery for damages against state officials acting in their individual capacities, the Court declines to reach" the qualified immunity "question.") (citing Sossamon, 560 F.3d at 327 ("Of course, if no private right of action exists against the defendants in their individual capacities, then a qualified immunity ... analysis would be unnecessary."); see also Alvarez, 2010 WL 582217, at *11 (citing Sossamon in support of the court's decision to decline to reach a qualified immunity analysis once it found that individual damages were not available against defendants)). If the court were to consider this argument, though, it would grant defendants' request for qualified immunity primarily because it was not until nearly four years after the events complained of herein that the Ninth Circuit interpreted RLUIPA with respect to the provision of kosher meals. See Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008). Thus, it is entirely plausible that defendants Broderick and Mason had no notice of the evolving status of the law in this Circuit on this question until *after* the conduct complained of herein.

### *IV.  Injunctive Relief*

In addition to seeking monetary damages, plaintiff is seeking "[a] Court Order requiring 3 [three] Kosher meals or the equivalent for all Kosher diets[.]" SAC (Doc. 106) at 13, ¶ E.

Defendants offer several reasons for dismissing as moot this claim for injunctive relief. There is no need to address each of those reasons, however, because one is dispositive; that is, plaintiff Patterson "is receiving *precisely* the diet that he is seeking by way of injunctive relief in this action." See Reply (Doc. 124) at 4:11 (emphasis added).

As defendants stress, and plaintiff concedes, he has been "given his main request  - 3 kosher meals[.]" Resp. (Doc. 124) at 4. Indeed, plaintiff acknowledges that he was granted that request "about 6 months after he filed this case[,]" *i.e.,* roughly six months after April 15, 2005, or, more than six years ago. See id. Not only that, presumably based upon the foregoing, in April, 2010, plaintiff sought an order, *inter alia*, "enjoining the ADC from *discontinuing* the 3-meal-a-day kosher diet that he currently receives," and "'*moot*[ing] his action as complete[.]'" Patterson v. Schriro, 2010 WL 3522500, at *1 (D.Ariz. 2010) (emphasis added) (citing Mot. (Doc. 87)).[6] In denying that preliminary injunction motion, this court explained that plaintiff did not "set forth any facts indicating that he [wa]s subject to a threat of irreparable harm" where he did "not explain why an order to *maintain* his kosher diet [wa]s necessary nor d[id] he present any facts showing that his

---

[6] The court takes judicial notice of plaintiff's earlier motion and the court's decision relating thereto, as well as plaintiff's response to the pending motion. See Spectravest, Inc. v. Mervyn's Inc., 673 F.Supp. 1486, 1490 (N.D.Cal. 1987) (citation omitted) ("Court may take judicial notice of the existence of an earlier pleading, particularly when the same parties are involved.") The court may take judicial notice in its discretion even absent a specific request for judicial notice ("RJN") by a party. See Rodriguez v. SGLC, Inc., 2010 WL 2943128, at *1 n. 4 (E.D.Cal. 2010) (granting defendants' RJNs, although such requests where "unnecessary for pleadings in ths same case[]"). By taking judicial notice, there is no need, as defendants suggest, to convert this aspect of their dismissal motion to one for summary judgment. See Mot. (Doc. 115) at 10:20, n. 4.

- 14 -

current kosher diet is likely to be discontinued or changed in the future." Id. at *2 (emphasis added). As to plaintiff's request to moot the action, the court found that because it had recently granted plaintiff leave to amend his complaint, that "indicate[d] his desire to proceed with this litigation[.]" Id. (citation omitted).

Given that plaintiff is receiving the kosher diet that he is seeking through an injunction, defendants argue that this claim is moot because no case or controversy exists as Article III requires. Plaintiff disagrees, arguing that "ADOC & CACF regularly take his diet for false reasons and an injunction might prevent him from such abuse." Supp. Resp. (Doc. 124) at 1. Defendants retort that the issue of whether those "previous suspensions and delays . . . were justified is not . . . before the Court." Reply (Doc. 125) at 4:9-10. Even if they were, defendants reiterate that an injunction requiring plaintiff to receive a "'complete daily' kosher diet (when available)[,]" nonetheless is moot due to the lack of a case or controversy. See Resp. (Doc. 116) at 2.

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" or "Controversies." See U.S. Const. art. III, § 2, cl. 1. "The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." Pitts v. Terrible Herbst, Inc., 2011 WL 3449473, at *3 (9th Cir. 2011) (citing Burke v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987)). "Whether 'the dispute between the parties was very much alive

- 15 -

when suit was filed . . . cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires.'" Id. (quoting Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).  "A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome' of the litigation." Id. (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).  "In other words, if events subsequent to the filing of the case resolve the parties' dispute," the court "*must* dismiss the case as moot" because the court does "not have the constitutional authority to decide moot cases[.]" Id.  (internal quotation marks and citations omitted) (emphasis added).

Applying those well-settled rules to the present case, it is patently obvious that plaintiff Patterson's request for "[a] court order requiring 3 kosher meals or the equivalent for all kosher diets, no vegetarian[,]" SAC (Doc. 106 at 6, ¶ E(1), is moot.  Since shortly after the filing of this lawsuit, plaintiff Patterson has been receiving the very kosher diet for which he requests injunctive relief.  Hence, there is no longer any "present controversy as to which [that] relief can be granted." See Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010) (citation omitted), cert. denied, 131 S.Ct. 2096, 179 L.Ed.2d 891 (U.S. 2011).  Consequently, the court GRANTS defendants' motion to dismiss for lack of subject matter jurisdiction insofar as plaintiff is seeking injunctive relief requiring that he be provided three kosher meals.  That particular claim is moot.

1  Because the court finds that none of these three claims can
2 be cured by allegations of other facts, defendants' motion
3 herein is granted with prejudice.  See Balsam v. Tucows Inc.,
4 627 F.3d 1158, 1163 n. 3 (9th Cir. 2010) (citation omitted)
5 ("because no amendment could cure the defect in [plaintiff's]
6 claims[,] [t]he district court did not err in dismissing the
7 complaint with prejudice[]").

8  For the foregoing reasons, **IT IS ORDERED** that:

9  (1) the reference to the Magistrate Judge is **WITHDRAWN** as
10 to defendants' "Amended Motion to Dismiss RLUIPA and Injunction
11 Claims" (Doc. 115);

12  (2) Defendants' "Amended Motion to Dismiss RLUIPA and
13 Injunction Claims" (Doc. 115) is **GRANTED** with prejudice.

14  DATED this 26th day of August, 2011.

_____
Robert C. Broomfield
Senior United States District Judge

22 copies to counsel of record and plaintiff *pro se*

- 17 -