**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Barry Northcross Patterson,<br><br>        Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>        Defendants. | No. CV 05-1159-PHX-RCB (SPL)<br><br>**ORDER** |

Plaintiff Barry Northcross Patterson brought this civil rights action pursuant to 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Chaplains G. Broderick and Wayne F. Mason (Doc. 106). Before the Court is Defendants' Motion for Summary Judgment (Doc. 145), which Plaintiff opposes (Doc. 150).

The Court will grant summary judgment to Defendants but deny their request for attorney's fees.

**I.    Background**

Plaintiff initiated this action in April 2005 and filed a First Amended Complaint in May 2005 (Docs. 1, 7). The case proceeded on three counts against seven ADC Defendants; Plaintiff's claims concerned the alleged denial of a religious diet and a retaliatory transfer (Doc. 10). In January 2007, the Court granted Defendants' motions to dismiss and for summary judgment and entered judgment in favor of Defendants and against Plaintiff (Docs.

71-72). Plaintiff appealed, and the Ninth Circuit Court of Appeals affirmed in part and vacated in part and remanded Plaintiff's First Amendment religious-diet claim against Broderick and Mason in light of the intervening decision in Shakur v. Schriro, 514 F.3d 878, 885-88 (9th Cir. 2008) (Doc. 81). Plaintiff was permitted to file a Second Amended Complaint to add a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. (Docs. 100, 106). Plaintiff's RLUIPA claim was subsequently dismissed by the Court (Doc. 127).

The sole remaining claim in Plaintiff's Second Amended Complaint is his allegation that Defendants violated his First Amendment free-exercise rights when they denied him kosher breakfasts and lunches even though he is a Messianic Jew eligible for a kosher diet under ADC regulations (Doc. 106 at 3). Plaintiff averred that he received vegetarian breakfasts and lunches and only his dinners were kosher (id. at 3-3A). He requested compensatory and punitive damages (id. at 6).[1]

Defendants now move for summary judgment on the grounds that (1) they are not liable because they merely responded to Plaintiff's administrative complaints, (2) Plaintiff's desire to keep kosher is not sincerely held or rooted in religious belief, (3) there were legitimate penological reasons for serving Plaintiff a diet with just one kosher meal a day; and (4) they are entitled to qualified immunity (Doc. 145).

**II.   Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S.

---

[1]The Court granted Defendants' Motion to Dismiss for lack of subject matter jurisdiction as to Plaintiff's request for injunctive relief because he has received three kosher meals a day since late-2005; thus, his claim for injunctive relief was moot (Doc. 127 at 14-17).

- 2 -

1 at 323.

2 If the movant meets its initial responsibility, the burden then shifts to the nonmovant
3 to demonstrate the existence of a factual dispute and that the fact in contention is material,
4 i.e., a fact that might affect the outcome of the suit under the governing law, and that the
5 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
6 the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton
7 Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need
8 not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
9 factual dispute be shown to require a jury or judge to resolve the parties' differing versions
10 of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89
11 (1968).

12 At summary judgment, the judge's function is not to weigh the evidence and
13 determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
14 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
15 inferences in the nonmovant's favor. Id. at 255.

16 **III.   Facts**

17 With their summary judgment briefing, the parties each submit a separate Statement
18 of Facts and supporting exhibits, including declarations, grievance documents, Plaintiff's
19 deposition, and copies of ADC policies (Doc. 146, Defs.' Statement of Facts (DSOF); Doc.
20 151, Pl.'s SOF (PSOF)). Many of the parties' factual assertions are not relevant for the
21 reasons set forth in the analysis. The relevant undisputed and disputed facts underlying
22 Plaintiff's claim are as follows:

23 Plaintiff is a Messianic Jew, and in 2004, when he was housed at the Rynning Unit,
24 he requested a kosher diet (PSOF ¶ 1). Broderick informed Plaintiff that he was approved
25 for the "Kosher Diet Plan" as of March 10, 2004, and as soon as Plaintiff received his "diet
26 card" he would begin receiving the Kosher diet (DSOF ¶ 31; PSOF ¶ 31). But instead of a
27 full kosher diet, Plaintiff was provided with a vegetarian breakfast and lunch and a kosher
28 dinner (DSOF ¶ 2; PSOF ¶ 2). Plaintiff never requested a vegetarian diet, and at the time he

1   requested a kosher diet and was approved for it, he was unaware that the "Kosher Diet Plan"
2   did not consist of three kosher meals a day (PSOF ¶¶ 2, 32).

3         Defendants state that before 2005, ADC offered two kosher-diet plans, identified in
4   the Food Service System policy as the "Regular Kosher" diet plan and the "Orthodox
5   Kosher" diet plan; the "Orthodox Kosher" diet plan was only for inmates who were Orthodox
6   Jews (DSOF ¶ 60, Ex. E, Attach. 4, 912-T-OP §§ 912.10, 1.5.2-1.5.3). The Restricted Diet
7   Order form, used to formally request a special diet, does not provide for two kosher meal
8   plans; the only option is the "Kosher Diet Plan," which Plaintiff requested (PSOF ¶ 60,
9   Ex. 5).

10        In late March 2004, Plaintiff submitted two inmate letters complaining that he was not
11  receiving a kosher diet (DSOF ¶ 32; PSOF ¶ 32). In his April 2, 2004 response, Broderick
12  advised Plaintiff that his approved Kosher Diet Plan consisted of one kosher meal and two
13  ovo-lacto vegetarian meals, unlike the Orthodox Kosher Diet that consisted of three kosher
14  meals (id.). On April 16, 2004, Plaintiff submitted another inmate letter to Broderick on this
15  issue; Senior Chaplain Sabbagh responded and informed Plaintiff that ADC Central Office
16  had established and approved different kosher diets for Orthodox and non-Orthodox Jewish
17  inmates (DSOF ¶ 33; PSOF ¶ 33).

18        Plaintiff was subsequently transferred to the Florence-South Unit where Mason was
19  assigned (DSOF ¶ 37). In June 2004, Plaintiff informed Mason that he did not want the
20  vegetarian/kosher combination diet, and he requested the kosher diet plan (DSOF ¶ 45(b);
21  PSOF ¶ 45(b)). In July 2004, Plaintiff submitted a grievance seeking three kosher meals a
22  day (DSOF ¶ 45(e); PSOF ¶ 45(e)).

23        On July 1, 2005, ADC switched from the two kosher meal plans to one meal plan for
24  all inmates receiving a kosher diet (DSOF ¶ 60).

25  **IV.   Parties' Arguments**
26      **A.   Defendants' Motion**
27        Defendants first argue that they cannot be liable for violating Plaintiff's constitutional
28  rights because they merely responded to Plaintiff's administrative complaints and inquiries,

- 4 -

and Mason once explained the kosher-diet history to Plaintiff (Doc. 145 at 3-4). According to Defendants, Plaintiff did not qualify for the full kosher diet, which they refer to as the Ashelman diet, because he was not an Orthodox Jew (id. at 4).[2] Defendants contend that because they lacked authority to change ADC policy that limited full kosher diets to Orthodox inmates, they are entitled to judgment (id.).

Next, Defendants argue that Plaintiff's desire to keep kosher is not sincerely held or rooted in religious belief as evidenced by conduct that is inconsistent with his claim to keep kosher (id. at 4-5). They state that Plaintiff was a recent convert to Messianic Judaism who showed a willingness to violate kosher rules and little familiarity with his professed faith (id. at 5).

Defendants submit that if the Court finds that Plaintiff did have a sincere religious belief to keep kosher and that their conduct implicated Plaintiff's First Amendment rights, they are still entitled to summary judgment because ADC had legitimate penological reasons to serve Plaintiff the combination diet (id. at 5-6). Defendants argue that ADC had a security interest in streamlining their food service and an interest in preserving scarce financial resources by providing food services within their budgetary constraints and without wasting money with costly meals for inmates who do not partake of them (id. at 6-7). In support, Defendants point to the increase in kosher diet requests and costs since ADC changed its policy in 2005 to provide completely kosher diets to non-Orthodox inmates (id. at 7). Defendants also argue that Plaintiff had alterative means of exercising his right to religious practice, and they assert that Plaintiff could still eat fruits, vegetables, eggs, and dairy products to supplement his combination meal plan (id. at 8).

Defendants contend that granting Plaintiff's special diet request would have effectively given him "carte blanche to make ADC provide [him] with a complete, kosher-certified diet on request" (id.). They again point to the results of the 2005 diet change and

---

[2]This name refers to the Stipulated Final Judgment from Ashelman v. Wawrzaszek, CV 83-1072-PHX (MS), which required ADC to provide Orthodox Jewish inmates with certified kosher meals.

- 5 -

1  argue that there was a significant impact on prison resources and staff as the cost for kosher
2  diets became prohibitive (id. at 8-9).

3  Lastly, Defendants assert that even if their conduct was found to have implicated
4  Plaintiff's constitutional rights, they are entitled to qualified immunity (id. at 9). They state
5  that they were administering the ADC policy that provided for a combination kosher meal
6  plan, that this meal plan had been approved by a rabbinical authority, and that no reasonable
7  official in their position would have known that this policy and meal plan violated Plaintiff's
8  First Amendment rights (id. at 11). Defendants seek summary judgment and an award of
9  attorneys' fees under 42 U.S.C. § 1988 (id.).

### B. Plaintiff's Response[3]

Plaintiff opposes Defendants' motion (Doc. 150). He asserts that he requested a kosher diet, and the ADC diet request form only listed one kosher meal plan; thus, there was no indication that he would receive a vegetarian-kosher combination diet (id. at 1). Plaintiff states that he "was not, is not, nor wants to be a vegetarian" (id.). Plaintiff asserts that Defendants approved a kosher diet for him and then intentionally provided something different without any regard for Plaintiff's religious beliefs (id. at 2).

Plaintiff notes the inconsistency between Defendants' authority to approve a religious diet for him and their claim now that they were not authorized to allow Plaintiff to receive a religious diet meeting his needs (id. at 2). Plaintiff suggests that they simply do not want "to accept the responsibility for the constant religious abuse directed against [him]" (id. at 5). Plaintiff also contends that Defendants' argument that they could not provide Plaintiff a full kosher diet for financial reasons is belied by the fact that they have provided full kosher diets to all Orthodox and non-Orthodox Jewish inmates for the last eight years (id. at 1-2). Plaintiff claims that he was denied the requested religious diet because Defendants had a "single-minded purpose" to keep Plaintiff from eating kosher (id. at 4).

---

[3]The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), that informed Plaintiff of the requirements of Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1 (Doc. 147).

Plaintiff maintains that contrary to Defendants' assertions, he has never conceded that keeping kosher is not a central tenet of his faith, and he avers that his request for a kosher diet is based on a sincere religious belief (id. at 4, 6). He states that he tries to follow God's word and accepts the kosher meals he is allowed and, when he is refused a kosher meal, he eats what he knows is kosher and tries to sustain himself, or he simply stops eating altogether (id. at 5). Plaintiff further states that just because he may eat kosher items from another inmate's tray or from the commissary, it does not mean that his desire to eat kosher is not sincere (id. at 6).

Plaintiff argues that Defendants' current claim that he was denied a full kosher diet because he was not an Orthodox Jew is a new claim and it is not the real reason for the denial in 2004 (id.). He alleges that Defendants lied to him, refused the approved diet, tried to force him to be a vegetarian, and have "continued to abuse him for 8 years with lies, retribution & illegal religious tickets and punishments" (id.).

### C. Defendants' Reply

Defendants note that Plaintiff acknowledges that the kosher/vegetarian diet he was provided conformed to his conception of kosher, given his assertion that it is the nature of the food rather than its preparation that is important (Doc. 155 at 4-5). Defendants assert that a vegetarian diet, by definition, cannot contain meat products forbidden by kosher laws; thus, the vegetarian/kosher diet served Plaintiff's purposes and did not implicate his First Amendment rights (id. at 5).

Defendants argue that to the extent Plaintiff challenges the 2004 ADC policy that allowed for two different kosher meal plans, they did not enact that policy; they were just involved in its administration (id. at 4-5). Thus, Defendants reiterate that they cannot be liable for a constitutional violation (id.). They also reiterate their arguments that Plaintiff's desire to keep kosher was not sincerely held, that there were legitimate penological reasons to serve Plaintiff the combination diet, and that they are entitled to qualified immunity (id. at 5-8).

. . .

- 7 -

## V.   Governing Legal Standard

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" Shakur, 514 F.3d at 883-84 (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884-85 (noting the Supreme Court's disapproval of the centrality test and finding that the sincerity test in Malik determines whether the Free Exercise clause applies).

Once that showing is made, an inmate must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85.

Finally, even if a prison regulation burdens an inmate's free exercise of religion, the regulation is valid if is reasonably related to legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Shakur, 514 F.3d at 884 (quoting O'Lone, 482 U.S. at 348). To determine if a regulation is valid, courts must consider four factors: (1) whether there is a rational connection between the regulation and the asserted government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodation of the right will impact the prison or other inmates; and (4) whether there is an absence of ready alternatives. Turner, 482 U.S. at 89-90.

## VI.   Analysis

### A.   Liability

Before conducting an analysis under the First Amendment, the Court addresses Defendants' argument that they should be dismissed because they "merely responded" to Plaintiff's complaints and inquiries (Doc. 145 at 3-4). Defendants' unsuccessfully raised this same argument in their first summary judgment motion (Doc. 47 at 8). For the same reasons as set forth in its prior Order, the Court will not dismiss Defendants on this basis (Doc. 71

at 8).

B.     Sincerely Held Belief

Defendants present the exact same argument they submitted in their first summary judgment motion, and rely on the same pre-Malik case law, to assert that Plaintiff's desire to keep kosher was not sincerely held or rooted in religious belief (compare Doc. 47 at 10 with Doc. 145 at 4-5). See Malik, 16 F.3d at 333 (establishing the sincerity test to determine whether Free Exercise Clause applies).  Again, Defendants' argument fails.  Despite evidence of religious conversions or occasional behavior contrary to purported religious views, Plaintiff professes a belief in Messianic Judaism and the need to abide by kosher dietary laws (see Doc. 150 at 4, 6; Doc. 151, PSOF ¶¶ 1, 8, 11-12, 70, 87-88).  On Defendants' motion, all facts and the inferences therefrom must be construed in Plaintiff's favor.  Anderson, 477 U.S. at 255.  For the Court to determine that Plaintiff's beliefs are not sincere, it would have to find that Plaintiff is not credible, which it cannot do on summary judgment.  See id. Defendants' request for summary judgment on this ground will be denied.

### C.     **Burden on Religious Practice**

As mentioned, the protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur, 514 F.3d at 884-85.  With respect to accommodation of various religious affiliations, prison authorities are not responsible for duplicating every religious benefit provided to other religions so that all religions are treated exactly the same.  See Cruz v. Beto, 405 U.S. 319, 322, n. 2 (1972) ("[w]e do not suggest . . . that every religious sect or group within a prison—however few in number—must have identical facilities or personnel.  A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand"); see also Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987) (prison administrators need not provide each inmate with the spiritual counselor of his or her choice).  Thus, the fact that Plaintiff—a Messianic Jew—was denied the exact same kosher diet plan provided to

- 9 -

Orthodox Jewish inmates, by itself, does not violate Plaintiff's free-exercise rights.

Instead, Plaintiff must show that the combination vegetarian/kosher meal plan that he was provided burdened his practice of religion. Unlike the prisoner-plaintiff in Shakur, Plaintiff does not allege that the vegetarian diet provided by the prison caused him gastrointestinal problems or any other health problems that in turn substantially burdened his religious activities. See 514 F.3d at 885 (given the plaintiff's sincere belief in consuming kosher meat and the gastrointestinal distress caused by the vegetarian diet, which interfered with his religious activities, the prison's refusal to provide a kosher meat diet implicated the Free Exercise Clause).

Nor does Plaintiff allege that the vegetarian/kosher combination diet did not adhere to his religious beliefs. Plaintiff states that pursuant to his beliefs, all vegetables are kosher, and he "gladly eats grains, fruits, vegetables, eggs, milk & dairy products without complaint" because "its all kosher" (Doc. 151, PSOF ¶ 26; Doc. 150 at 7). See Ashelman v. Wawrzaszek, 111 F.3d 674, 675 n. 2 (9th Cir. 1997) (fruits and vegetables and some cereals are kosher). As Defendants point out, Plaintiff's conception of kosher is based on the nature of the food and not its preparation (Doc. 155 at 4-5). Indeed, as Plaintiff states in his response, he believes that he can accept a regular food tray and eat only the kosher items or exchange the non-kosher meat for other kosher items and still satisfy his beliefs (Doc. 150 at 4). He also states that his religious beliefs are not burdened by the denial of any specific food, such as pie or turkey (Doc. 146, DSOF ¶ 20; Doc. 151, PSOF ¶ 20).

In short, Plaintiff provides no specific facts or evidence, or even an allegation, that the vegetarian/kosher diet interfered with or burdened his religious practice. Instead, Plaintiff establishes that he is not a vegetarian and he did not like being forced to consume a vegetarian diet to keep kosher (see Doc. 151, PSOF ¶ 26). Plaintiff's allegations and evidence also demonstrate that Defendants provided a misleading diet request form and were not entirely forthright when they approved him for a kosher diet but did not inform him that it was actually a combination vegetarian/kosher diet. But none of this implicates the First Amendment where there is no showing that Plaintiff's religious practice was burdened as a

result. See Shakur, 514 F.3d at 884-85.

Plaintiff's allegations that Defendants wrongfully issued him tickets for "sharing" food, that they abused him with "lies" and "retribution," or that they otherwise retaliated against him are beyond the scope of this action, which relates solely to whether the provision of a vegetarian/kosher diet rather than a full kosher diet violated Plaintiff's First Amendment free-exercise rights (see Doc. 150 at 6). The Court finds that there is no genuine dispute of material fact whether Plaintiff's religious practice was burdened by the vegetarian/kosher diet. Accordingly, the First Amendment is not implicated, and Defendants are entitled to summary judgment. See Shakur, 514 F.3d at 884-85.

In light of this determination, the Court need not conduct an analysis under Turner to determine whether the ADC's 2004 two kosher meal plan served a legitimate penological interest, nor is it necessary to address Defendants' qualified immunity argument.

**VII.   42 U.S.C. § 1988**

Under § 1988, a district court may award attorney's fees to a prevailing defendant only if the plaintiff's underlying claim is frivolous or without foundation. Maag v. Wessler, 993 F.2d 718, 719 (9th Cir. 1993). The Court does not find that Plaintiff's claims were frivolous or without foundation; therefore, it will deny Defendants' request for attorney's fees.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 145).

(2) Defendants' Motion for Summary Judgment (Doc. 145) is **granted in part** and **denied in part** as follows:

    (a) the motion is **granted** as to summary judgment in favor of Defendants on the remaining First Amendment claim;

    (b) the motion is **denied** as to attorney's fees under 42 U.S.C. § 1988.

(3) The Clerk of Court must enter judgment accordingly and terminate the action.

. . .

(4) For the reasons set forth herein, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from the judgment in this action would not be taken in good faith.

DATED this 30th day of May, 2012.

_____
Robert C. Broomfield
Senior United States District Judge